**Matthew L. GOODRICH, QM3 (Seal) U.S. Navy, Plaintiff–Appellant,**

v.

**Richard DANZIG, Honorable, Secretary of the Navy, J. Maguire, Captain, Commanding Officer Naval Special Warfare Center, Coronado, Defendants–Appellees.**

No. 99–56679.

D.C. No. CV–99–01318–MLH.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 9, 2001.

Decided April 16, 2001.

Before HUG and B. FLETCHER, Circuit Judges, and KING,* District Judge.

## MEMORANDUM[1]

### I.

Matthew J. Goodrich ("Goodrich" or "plaintiff") was a twelve-year veteran of the Navy. On October 28, 1998, he was arrested by military authorities for drunk and disorderly conduct and indecent assault on a junior enlisted female airman, Christy L. Kronauge ("Kronauge"). The victim's complaint stated that Goodrich entered her unlocked room while she was in her bed wearing only her undergarments. Goodrich then allegedly lay on top of her and attempted to kiss her, succeeding in kissing her on the neck. According to Kronauge, a struggle followed, and she succeeded in getting Goodrich off of her and wrapped herself in a towel. Goodrich then left her room.

An extensive Naval investigation commenced, which progressed along two tracks. The first track was to decide whether Goodrich would be subject to disciplinary punishment. He ultimately was reduced from pay grade E–5 to pay grade E–4. The second investigation involved whether Goodrich should be "separated" from naval service, in other words discharged with "other than honorable" status. After Goodrich's case had progressed through several layers of appeals, on June 18, 1999, the Assistant Secretary of the Navy decided that Goodrich should be separated from the Navy for misconduct.

On June 24, 1999, Goodrich filed a civil action in federal district court for temporary, preliminary, and permanent injunctive relief, asking the court to enjoin the Secretary of the Navy ("Secretary") from carrying out the separation order. Both parties requested an expedited hearing on the TRO, which took place on June 29, 1999. The district court decided "that it was preferable to issue a TRO in order to maintain the status quo pending a preliminary injunction hearing." The district court cautioned, however, that (1) it was not ruling on the merits of the case and (2) a final determination would require proper development of the record. On July 7, 1999, the parties informed the court that the motion for preliminary and permanent injunction was moot because Goodrich had been granted an honorable discharge from the Navy on July 1, 1999.

Goodrich then moved for attorneys fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. By order of August 23, 1999, the district court denied this motion. Goodrich appeals this decision. The decision whether to award fees under the EAJA is reviewed for an abuse of discretion. *Corbin v. Apfel,* 149 F.3d 1051, 1052 (9th Cir.1998). We affirm the district court's denial of fees and costs under the EAJA.

### II.

The EAJA allows an award of fees and costs incurred only if the court finds that the government was not "substantially justified." 28 U.S.C. § 2412(d)(1)(A). The Secretary bears the

---

* The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

1. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

burden to show that he was substantially justified. *Yang v. Shalala,* 22 F.3d 213, 217 (9th Cir.1994). To meet this burden, the Secretary must show that his position was reasonable, both in law and fact. *Id.* The government need not be justified to a high degree, but rather justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person. *Bay Area Peace Navy v. United States,* 914 F.2d 1224, 1230 (9th Cir.1990).

■ The district court "declined to find" that the government's position was not substantially justified. Because this was not an abuse of discretion, we affirm its ruling not to grant fees or costs.

First, the decision itself to defend this lawsuit was undeniably reasonable. Goodrich was found to have committed the military offense of Indecent Assault. The maximum court-martial punishment for this offense is dishonorable discharge, forfeiture of all pay and allowances, and confinement for five years. Manual for Courts–Martial, United States (1998 ed.) ("MCM"). After numerous hearings and appeals had been conducted according to Military procedure, the Assistant Secretary of the Navy agreed that Goodrich should be given a less than an honorable discharge. There is no doubt that the Secretary acted reasonably in deciding to defend a subsequent lawsuit seeking a court order to undo the Assistant Secretary's decision. On this basis, the Secretary's decision was substantially justified.

However, we look not only at whether the government was substantially justified in defending the validity of its actions in court, we also look to whether the government was substantially justified in taking its original actions. *Meinhold v. United States Dep't of Defense,* 123 F.3d 1275, 1278 (9th Cir.1997). Goodrich argues that the investigation and hearings leading to the decision to discharge him were so fraught with procedural error and bias as to have denied him his Constitutional, statutory and regulatory rights. We disagree.

Although Goodrich presents a litany of alleged procedural error and bias, most of his accusations are baseless, and the ill effects of the few allegations that may have some merit were ameliorated by the Military appeals process.

■ First, Goodrich argues that "significant evidence . . . of innocence, mitigation, and extenuation," that would have "made his case much stronger" was ignored during the investigation. This argument is premised primarily on the notion that a sexual attacker can support his side of the story by proving that his victim probably "asked for it" or "consented" based on her reputation as promiscuous. It is a well-established rule of modern jurisprudence that we do not credit or even allow the admission of this kind of evidence. *See, e.g.,* Fed. R. Ev. 412(a) ("Evidence offered to prove that any alleged victim engaged in other sexual behavior" or "to prove any alleged victim's sexual predisposition" is inadmissible.). This rule has been incorporated into the Military Rules of Evidence and Rules for Courts–Martial, which are both found in the Manual of Courts–Martial. Mil. R. Evid. 412; R.C.M. 405(i) (although most of the Military Rules of Evidence do not apply to pretrial investigations, Rule 412 does apply); Mil. R. Evid. 1101(d) (rules relating to privileges *and* Rule 412 are the only Military Rules of Evidence applicable to investigative hearings). This rule expressly applies to cases of alleged indecent assault. Mil. R. Evid. 412(e). Most of Goodrich's claims of error are premised on the value that this evidence would have had for his case; these claims are all based on a misconception of the law.

Second, Goodrich argues that LT Paredes could not carry out an impartial investigation because of her romantic in-

volvement with Goodrich's supervisor, LT Ryan, who was accused of acting with Goodrich to do some of the same things that Goodrich had done. First, this conflict of interest was barely relevant because LT Ryan did not take part in the assault and Goodrich was only punished for the assault, not for what may have happened in concert with LT Ryan at another time. Furthermore, Paredes collected evidence and made recommendations at the Nonjudicial Punishment hearing and one other hearing, but never played a decisional role and played no role at all after these hearings. Finally, even if she had a motive to protect LT Ryan, any taint surrounding her investigation of Goodrich was removed as his case was considered by at least four other military tribunals.

Goodrich also argues that the Navy violated other regulations throughout the investigation. Most of these allegations stem from his theory that all of the proceedings were tainted because they depended on the evidence gathered by LT Paredes. We have already noted that we disagree with these arguments.

Goodrich points, in particular, to events before one body, the Administrative Discharge Board ("ADB"). The ADB asked Goodrich to take a lie detector test. Goodrich refused to take a Navy-administered test, but offered to take a test administered by the FBI. The ADB refused this offer, and noted that it could consider Goodrich's refusal as an indicator of his untruthfulness. However, the ADB voted, 3–0, to retain Goodrich in the Navy.[2] If there was error, it was harmless. The decision to discharge was made subsequently, by different entities.

Finally, Goodrich argues that the appellate bodies considering his discharge were supposed to focus on the allegations of indecent assault only; they were prohibited by regulation from considering accusations of Goodrich's drunk and disorderly conduct, or past accusations of his problems with alcohol. Nevertheless, the mid-level appeals entity, the Commander, Naval Special Warfare Command, appeared to consider the past history of alcohol abuse. Goodrich himself ensured that any taint was removed when he wrote a letter identifying this discrepancy to the Assistant Secretary of the Navy ("ASN"), the person who reviewed the Commander, Naval Special Warfare Command's recommendation. Goodrich does not suggest that the ASN ignored his letter and considered the forbidden subject matter.

We are not to decide whether the investigation of Goodrich was devoid of any procedural inconsistencies. Nor are we to decide whether Goodrich deserved to be administratively discharged; in the end, he was not discharged. Our task is to decide whether the investigation of Goodrich was so fundamentally flawed that the district court's conclusion to the contrary was an abuse of discretion. We hold that it was not; the Secretary was substantially justified to defend this lawsuit, and Goodrich is ineligible for fees and costs under the EAJA.

AFFIRMED.

---

**2.** The ADB did vote, 2–1, that Goodrich committed misconduct.